No. 100,616

In the Matter of MICHAEL L. JONES, *Respondent*.
(193 P.3d 893)

Opinion filed October 17, 2008.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with him on the formal complaint for petitioner.

*Michael L. Jones*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Michael L. Jones, a Wichita attorney admitted to the practice of law in Kansas in 1968.

The hearing panel found that the respondent violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2007 Kan. Ct. R. Annot. 398) (diligence); KRPC 1.15(b) (2007 Kan. Ct. R. Annot. 473) (duty to promptly deliver funds or property of a client or third party); KRPC 8.1(b) (2007 Kan. Ct. R. Annot. 553) (bar admission and disciplinary matters); KRPC 8.4(d) (2007 Kan. Ct. R. Annot. 559) (engaging in conduct prejudicial to administration of justice); KRPC 8.4(g) (engaging in conduct adversely reflecting on fitness to practice law); and Kansas Supreme Court Rule 207(b) (2007 Kan. Ct. R. Annot. 288) (duties of the bar and judiciary). The hearing panel unanimously recommends that the respondent be suspended from the practice of law for 30 days.

This case arises out of the respondent's conduct as the attorney for a probate estate. It is a companion case to *In re Jones*, 286 Kan. 544, 186 P.3d 746 (2008), in which the respondent's brother, attorney Stephen J. Jones, was indefinitely suspended as a result of his conduct as the administrator for the same probate estate. The estate was opened in 1998, and by early 2000, all of the property of the estate had been liquidated and all of the debts had been paid. Although the estate could have been closed and the proceeds distributed to the heirs at that time, neither the respondent nor

his brother took action to close the estate and distribute the proceeds until December 2006, after an investigation into a disciplinary complaint filed by one of the heirs was underway.

At the commencement of the hearing before a panel of the Kansas Board for Discipline of Attorneys, the respondent stipulated that the factual allegations contained in the formal complaint were true and resulted in the disciplinary rules violations set forth therein. Respondent then testified in mitigation of his conduct.

The Deputy Disciplinary Administrator recommended a 6-month suspension from the practice of law. Respondent sought censure. The panel recommended a 30-day suspension. Respondent filed no exceptions to the final hearing report.

The panel made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:
. . . .

"2.　On June 23, 1998, John E. Regan, a resident of Wichita, Kansas, died intestate. Mr. Regan worked at Cessna, owned a liquor store in Wichita, and owned a home in Wichita. Mr. Regan never married and had no children. Mr. Regan's parents were deceased and his only heirs were his uncles, aunts, and cousins. None of his heirs lived in Kansas.

"3.　Mr. Regan's cousin, Peter Regan, lived in Anchorage, Alaska. Peter Regan traveled from Alaska to Wichita, Kansas, to arrange for his cousin's burial and to initiate his estate.

"4.　While in Wichita, Peter Regan met with the Respondent regarding John E. Regan's estate. The Respondent and Stephen Jones are brothers. Stephen Jones is an attorney. He and the Respondent maintain separate law offices. The Respondent recommended that the Stephen Jones serve as Administrator of John E. Regan's estate.

"5.　Peter Regan retained the Respondent to probate his cousin's estate and paid $500 in attorneys fees.

"6.　On July 1, 1998, the Respondent filed a Petition for Appointment of Administrator and Special Administrator. The Court approved the Petition and Stephen Jones was appointed to serve as the Administrator of John E. Regan's Estate.

"7.　At the time of his death, Mr. Regan had a pending workers' compensation case against Cessna. In that case, Stephen Jones represented Mr. Regan. Shortly after Mr. Regan's death, Stephen Jones received a settlement check from Cessna in the amount of $32,469.60 in full settlement of Mr. Regan's workers' compensation case. After attorneys fees, Mr. Regan's Estate received $22,708.45.

"8.    Thereafter, the Respondent filed an Amended Petition in the probate proceeding. According to the Amended Petition, John E. Regan had 16 heirs.

"9.    After the probate case was filed, Peter Regan inventoried John E. Regan's real property, personal property, and stock at the liquor store. Stephen Jones paid creditors of the estate approximately $16,000.00 and liquidated the liquor store inventory.

"10.    On October 29, 1999, the Court approved the sale of John E. Regan's home. On December 23, 1999, Stephen Jones completed the sale of the house and paid himself $4,045.56 as Administrator.

"11.    After Stephen Jones liquidated the assets, paid the creditors, and paid himself, the probate estate consisted of $27,301.00. Stephen Jones placed the net proceeds in a non-interest bearing checking account in his name as Administrator of the estate of John E. Regan.

"12.    Thereafter, Stephen Jones took no action to distribute the net proceeds of the Estate and the Respondent took no action to close the Estate.

"13.    Finally, on February 25, 2006, Dorothy Brown, one of the heirs, filed a complaint with the Disciplinary Administrator's office against Stephen Jones for his conduct as Administrator of the Estate. On March 7, 2006, the Disciplinary Administrator forwarded a copy of Ms. Brown's letter to the Respondent and requested that the Respondent provide a written response to the complaint within fifteen days. The Respondent failed to respond to the request for a written response.

"14.    On May 24, 2006, the Disciplinary Administrator again requested in writing that the Respondent provide a written response to the complaint. On June 6, 2006, the Respondent sent a letter, *via* facsimile, requesting additional time to respond. The Disciplinary Administrator agreed to extend the Respondent's time to provide a written response to the complaint to June 23, 2006. The Respondent failed to provide a written response by June 23, 2006.

"15.    On June 25, 2006, the Respondent requested an additional extension of time to provide a written response to the initial complaint. The Respondent agreed to provide a response before the end of the week. The Respondent failed to provide a written response by the end of that week.

"16.    The Disciplinary Administrator directed the Respondent to provide a written response to the initial complaint by August 4, 2006. On August 4, 2006, the Respondent sent a response to the Disciplinary Administrator.

"17.    On December 8, 2006, John Seeber, the attorney appointed to conduct an investigation of the complaint, took the Respondent's deposition, pursuant to a subpoena.

"18.    On December 15, 2006, the Respondent filed a Petition for Final Settlement of the Estate. On December 22, 2006, Stephen Jones finally made a distribution of the assets to the heirs.

"19.    Between December, 1999, and December, 2006, Peter Regan and other heirs contacted the Respondent and Stephen Jones on a number of occasions seeking information regarding the distribution of the Estate's net assets.

"20.   Three of the heirs slated to inherit from John E. Regan's Estate died after the Estate should have been distributed but before it was actually distributed. The three heirs lost the opportunity to benefit from their inheritance.

## "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact and the Respondent's stipulation at the hearing, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.15(b), KRPC 8.1(b), KRPC 8.4(d), KRPC 8.4(g), and Kan. Sup. Ct. R. 207(b), as detailed below.

. . . .

"2.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to the Estate of John Regan when he failed to take any action to cause the Administrator to promptly distribute the proceeds of the Estate. Because the Respondent failed to act with reasonable diligence and promptness in representing the Estate of John Regan, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"3.   Lawyers must deal properly with their client's property. KRPC 1.15(b) provides:

'Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

The Hearing Panel concludes that the Respondent violated KRPC 1.15(b) by failing to see that the Administrator promptly distributed the proceeds of the Estate.

"4.   'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). Justice required the Respondent to see that the Administrator distributed the net proceeds of John E. Regan's Estate in late 1999 or early 2000. His failure to do so for a period of seven years resulted in significant prejudice to the administration of justice. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"5.   'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The Respondent owed a duty to the Estate of John E. Regan to see that the Administrator distribute the net proceeds of the Estate in a diligent fashion. The Respondent failed to do so. The Respondent's failure in this regard reflects on his fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

"6.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in

connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . . .' KRPC 8.1(c).

    'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent failed to provide a timely response to the initial complaint. Because the Respondent knowingly failed to provide a timely written response to the initial complaint filed by Ms. Brown as requested by the Disciplinary Administrator, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b)."

## RECOMMENDED DISCIPLINE

In considering the appropriate discipline, the hearing panel addressed the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions, specifically, the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors:

"*Duty Violated.* The Respondent violated his duty to [the] John E. Regan Estate to see that the Estate is diligently administered. Additionally, the Respondent violated his duty to the legal profession to cooperate in the disciplinary investigation.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury. Three of the heirs died before they realized their inheritance. The Respondent's misconduct cannot be remedied.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. The Respondent failed to ensure that the Administrator distribute the net proceeds of the Estate for a period of seven years. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.15(b), KRPC 8.1(b), KRPC 8.4(d), KRPC 8.4(g), and Kan. Sup. Ct. R. 207(b). As such, the Respondent committed multiple offenses.

"Vulnerability of Victim. The heirs of the Estate of John E. Regan were vulnerable to the Respondent's misconduct because none of the heirs lived in this area.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1968. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of more than 30 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Indifference to Making Restitution. To date, the Respondent has made no effort to pay interest to the heirs of the Estate of John E. Regan.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. Despite his failure to cooperate prior to the hearing, at the hearing, the Respondent fully admitted the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standard:

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

The panel then stated:

"The Hearing Panel has given consideration to the fact that the Administrator was the Respondent's twin brother and that the Respondent's brother was providing financial and other assistance to the Respondent necessary because of an investment made by the Respondent which failed. These circumstances made it more difficult for the Respondent to address with the Administrator the Administrator's failings. Nevertheless, in the Hearing Panel's view, the Respondent should have either taken action to see that the Estate was being administered appropriately or promptly withdrawn. Otherwise the Respondent allowed his own interests to conflict with the interests of his client. KRPC 1.7(b).

"Based upon the above considerations, the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for 30 days."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct

must be established by substantial, clear, convincing, and satisfactory evidence. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); see also Supreme Court Rule 211(f) (2007 Kan. Ct. R. Annot. 304) (misconduct to be established by clear and convincing evidence).

Here, respondent stipulated to the factual allegations contained in the formal complaint and the disciplinary rules violations charged therein. Additionally, he filed no exceptions, the results of which render the final hearing report to be deemed admitted. Supreme Court Rule 212(c) (2007 Kan. Ct. R. Annot. 317). We conclude the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law, and we adopt the panel's findings and conclusions.

By virtue of respondent's stipulation before the panel to the facts and disciplinary rule violations, the only matter at issue before the panel was the appropriate discipline to be recommended. As a result thereof, the only testimony was that of respondent as to what he believed were mitigating factors. At respondent's request, he gave his testimony in narrative form with a few questions by the Deputy Disciplinary Administrator and the panel.

The respondent testified that for the first couple of years, he believed there was a problem with the liquor store that Stephen was working on that was causing a delay in closing the estate. He testified that even though he had been receiving calls from Peter Regan, he pretty much ignored the estate. He testified that he asked his brother what was going on with the estate after receiving a letter from a woman about the estate. However, he did not get any information from his brother. The respondent testified that his brother could not address the matter because he was under a lot of stress. The respondent said he, too, was under a lot of stress, so he just let the matter "slide."

The respondent testified that he did not press Stephen about getting the estate closed because his brother was helping him out of financial trouble he had gotten into with a bad investment. The respondent testified that he had put a lot of money into a company that had an idea for a flossing device. The device, however, did not sell and, when the respondent ran out of money, his brother Ste-

phen stepped in to help him out financially and with the company. As the respondent explained:

"But . . . when it came down to getting this thing [the estate] closed, as I told [the disciplinary investigator], I said I probably felt a little compromised. My brother had been kind of my savior and he had the keys to the financial—my financial destiny and he was being wonderful about it. And he was working his tail off on this thing [the floss device] too and trying to make sense of it and get all of us out of the pit of this thing. He was under considerable stress and I was. And I just did not jump him, I think is the word we're all using, to get this finished."

The respondent also testified that he did not respond to the Disciplinary Administrator initially because he believed his brother would provide the information he needed to respond. He tried to find out what was going on from Stephen, but Stephen "froze" after receiving the complaint and would not respond to his questions asking him what they were going to do. The respondent testified that he felt he could not press his brother on the matter:

"And, you know, I didn't feel like—you know, if I attack him he's going to cut off the help from me and then I'll go completely under. Besides that, I'll make him so mad I'll lose my relationship with him and the family . . . ."

The respondent also testified that he had been treated for depression in the past, but that he was not currently depressed other than with his financial situation.

Respondent testified extensively as to his financial problems during the years that passed while he continued to ignore this estate and inquiries from the heirs. Before the panel and this court, little concern was expressed at the harm his inaction caused the heirs, three of whom died in the interim. The main thrust of respondent's argument related to suspension and the resulting harm it would cause him and his law practice. He seeks censure. As respondent stated in his concluding remarks to the panel, he believes he has "suffered enough over this to begin with." Shortly thereafter, he stated: "And I just ask the panel to, you know, if anything, slap my hand and say, you know, carry on, but don't do this again."

At the hearing before this court, respondent again concentrated on his situation and need for his brother's good will and financial support as justification for his years of inaction. It is difficult to

understand how the panel found that selfishness was not a factor in the misconduct. As the panel concluded, respondent's conduct was intentional. It was undisputed from respondent's own testimony that he acted intentionally. Respondent repeatedly stated he intentionally left the estate open out of concern his brother would shut off the personal financial support flowing to him if he pushed his brother about the estate. Respondent was not negligent in letting the estate stay open; rather, it stayed open by intention for respondent's personal gain. That clearly demonstrates selfishness was a factor in the misconduct.

We acknowledge that contrary to his brother Stephen's record, this is respondent's first disciplinary proceeding. We are also aware that the Disciplinary Administrator now acquiesces in the panel's recommended 30-day suspension. As the panel notes, respondent should have done his duty to the estate or withdrawn from the representation. Respondent had a conflict of interest which he resolved by sacrificing the estate in favor of his own financial gain. We conclude that a 6-month suspension is the appropriate discipline to be imposed herein.

IT IS THEREFORE ORDERED that Michael L. Jones be and he is hereby suspended for 6 months from the practice of law in Kansas, effective upon the filing of this opinion.

IT IS FURTHER ORDERED that Michael L. Jones shall comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.